**UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS**

|   |   |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff-Respondent, | ) |
| v. | ) CRIMINAL NO. 05-10239-PBS |
| MAHIRI KAZANA, | ) |
| Defendants-Petitioner. | ) |

**MEMORANDUM AND ORDER**

December 3, 2015

Saris, Chief Judge.

**INTRODUCTION**

Defendant Mahiri Kazana pled guilty in 2009 to conspiracy to distribute cocaine base and possession with intent to distribute cocaine base. As a pro se[1] petitioner, he now seeks to vacate that guilty plea on the basis of recent revelations concerning chemist Annie Dookhan and the William F. Hinton Drug Laboratory in Jamaica Plain (Docket No. 555). Specifically, Kazana contends, his plea was invalid because the government had not yet informed him of Dookhan's misconduct, relevant since Dookhan was a primary analyst on certain drug samples in the

---

[1] Kazana's attorney was permitted to withdraw because the petitioner stopped communicating with him. See Docket No. 644. The attorney had written Kazana's habeas corpus petition prior to withdrawal.

1

case. Kazana now claims he would have opted for trial had he known of the Dookhan scandal. The government did not file an opposition. Based on the memorandum submitted by the petitioner and the record in this case, the Court **DENIES** Kazana's motion to vacate.

## BACKGROUND

The facts surrounding this case are largely undisputed and are drawn from the presentencing report and indictment.

In fall 2006, law enforcement agencies investigated an individual named Husie Joyner who headed up a large powder cocaine and crack cocaine distribution ring. Kazana was one of Joyner's customers. As a result of phone calls between Kazana and Joyner, Kazana was charged in a sixteen-count indictment on September 8, 2005, naming 15 other co-defendants.

Kazana's first two drug-trafficking offenses relate to an individual investigation of Kazana on November 6, 2003, where the Boston Police Department seized three substances inside a coffee can and a semi-automatic pistol with an obliterated serial number from his residence at 145 Navarre Street. The Massachusetts State Laboratory determined these substances to be 12.67 grams of crack cocaine, 145.94 grams of powder cocaine, and 246.65 grams of powder cocaine.

Kazana's third offense relates to a seizure that took place on June 2, 2005 after Boston police officers conducted a traffic

stop of Kazana. After learning that Kazana's license was suspended, officers arrested Kazana and discovered a substance in the waistband of his underwear, which the Massachusetts State Laboratory later determined to be 14.21 grams of crack cocaine.

On June 17, 2009, Kazana pled guilty to counts 1, 10, and 17 of the sixteen charges: one count of conspiracy to distribute over 50 grams of cocaine base in 2003; one count of possession with intent to distribute over 5 grams of cocaine base in 2005; and one count of possession with intent to distribute over 50 grams of cocaine base in 2003. Kazana was sentenced to 132 months incarceration, which was below the 262-327 month range in the Sentencing Guidelines.

Three years later in August, 2012, the news broke that chemist Annie Dookhan had falsely certified drug test results and tampered with samples at the Hinton Drug Lab in Jamaica Plain. On August 20, 2013, Kazana sought to vacate his guilty plea as to three related drug trafficking counts and obtain a new trial pursuant to 28 U.S.C. §2255. In March, 2014, the Massachusetts Inspector General (OIG) released a report following an investigation of the lab, which stated in part that Dookhan was the sole bad actor, and that there was no evidence that any other chemist at the Hinton Drug lab committed any malfeasance. Kazana did not supplement his motion with any additional factual support after the report was released and

defense counsel withdrew at Kazana's request on April 30, 2014. (Docket No. 621). Kazana has completed his sentence and currently resides in Maryland while on supervised release.

### III. LEGAL STANDARDS

Title 28 U.S.C. § 2255(a) permits a prisoner to collaterally attack his sentence when it "(1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack." David v. United States, 134 F.3d 470, 474 (1st Cir. 1998). The petitioner bears the burden to make out a case for relief under § 2255. Id.

Generally speaking, "a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked." Mabry v. Johnson, 467 U.S. 504, 508 (1984), overruled in part on other grounds by Puckett v. United States, 556 U.S. 129 (2009). But a prisoner who pleaded guilty may still "collaterally attack his sentence on the ground that his guilty plea was not knowing or voluntary if is his claim is based on evidence not available to him at the time of the plea." Ferrara v. United States, 456 F.3d 278, 289 (1st Cir. 2006).

To prevail on this ground, a defendant must make two showings. "First, he must show that some egregiously impermissible conduct (say, threats, blatant misrepresentations,

4

or untoward blandishments by government agents) antedated the entry of his plea." Id. at 290. "Second, he must show that the misconduct influenced his decision to plead guilty or, put another way, that it was material to that choice." Id. To satisfy this second prong of materiality, a defendant must establish "a reasonable probability that, but for [the misconduct], he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). "A reasonable probability is a probability sufficient to undermine confidence in a belief that the petitioner would have entered a plea." Ferrara, 456 F.3d at 294.

"In mounting an inquiry into these elements, a court must consider the totality of the circumstances surrounding the plea." Ferrara, 456 F.3d at 290. Relevant factors include, but are not limited to, whether the withheld information: (1) would have detracted from the factual basis used to support the plea; (2) could have been used to impeach a witness whose credibility may have been outcome-determinative; (3) was cumulative of other evidence already in the defendant's possession; (4) would have influenced counsel's recommendation as to the desirability of accepting a particular plea bargain; and (5) was outweighed by the benefits of entering into the plea agreement. Id. at 294.

**DISCUSSION**

Kazana argues that his guilty plea should be vacated because it was not voluntary, knowing, and intelligent under Ferrara. This argument is unsuccessful.

For one thing, even though Dookhan was the primary chemist on the test conducted for the 14.21 gram amount of crack cocaine seized from Kazana on June 2, 2005, she was not involved at all in the testing done on the other two substance amounts of 145.94 grams and 246.65 grams. Under the marijuana equivalency chart set forth in U.S.S.G. § 2D1.1(c)(3), the latter two substance amounts together determined the petitioner's offense category notwithstanding the 14.21 grams tested by Dookhan. Excluding the Dookhan analysis makes no difference for Kazana's sentence.[2] As this Court recently held in United States v. Jackson, "there is no reasonable probability that [the petitioner] would proceed to trial when the government can present drug test results from evidence that was never touched by Dookhan." 54 F. Supp. 3d 102, 108 (D. Mass. 2014) (denying habeas petition where substances

---

[2] Moreover, the government stated at the hearing, at which the petitioner was not present, that the substances tested at the Hinton Drug Lab were also retested at the Massachusetts State Police laboratory, which confirmed that they were cocaine. See United States v. Wilkins, 754 F.3d 24, 29, (D. Mass. 2014) (denying habeas petition under Ferrara where there was "powerful circumstantial evidence" of defendant's guilt and where second round of testing on samples untouched by Dookhan yielded positive cocaine results).

6

belonging to petitioner were confirmed by non-suspect drug test results).

Most importantly, Kazana concedes that he is a career offender, which placed him in a higher sentencing guideline range irrespective of the weight of the substances seized from him. See Docket No. 521; Pre-Sentencing Report ¶¶ 201-205. For these reasons, Kazana's Ferrara argument fails.

Kazana also argues that the government failed to turn over other evidence of misconduct at the Hinton Laboratories in violation of his right to due process under Brady v. Maryland, 373 U.S. 83 (1963) (prosecutor must disclose exculpatory or impeachment evidence). However, he does not detail in his motion precisely what information was allegedly withheld from him that might have influenced his decision whether to go to trial. For this reason, his Brady-based due process argument fails.

## ORDER

For the foregoing reason, the petitioner's motion for relief pursuant to 28 U.S.C. § 2255 (Docket No. 555) is **DENIED**.

/s/ PATTI B. SARIS
Patti B. Saris
Chief United States District Judge